UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------X

NESHAMA CARLEBACH,

                        CASE NO. 7:19-CV-1195

          PLAINTIFF,

                        COMPLAINT

-   AGAINST -

SOJOURN RECORDS, INC., MARK AMBROSINO
and THOMAS LAVERICK,

          DEFENDANTS
-------------------------------------------------------------------------------X

       Plaintiff, NESHAMA CARLEBACH, ("Plaintiff," and "Licensor"), by her attorney hereby alleges as

follows:

## NATURE OF THE ACTION

       1.       This is an action by Plaintiff against Defendants for damages due to breach(es) of three

(3) agreements referred to herein as; the Neshama Carlebach Recording Agreement, ("NCRA."),

attached hereto as Exhibit "A," the Neshama Carlebach Licensing Agreement, ("NCLA."), attached hereto

as Exhibit "B" and the Shlomo Carlebach Licensing Agreement, ("SCLA"), attached hereto as Exhibit "C"

and for accountings and for declaratory relief of this Court, terminating the three said agreements, the

specific details, terms and conditions of which are more fully set forth below.

## PARTIES

       2.       Plaintiff Neshama Carlebach is a recording artist, musician, performer and songwriter

who resides in Westchester County in the State of New York.

       3.       Defendant Sojourn Records, Inc., ("Sojourn Records"), is a New York Domestic Business

Corporation, New York Department of State ID# 3429625, whose initial Department of State filing date

was October 26, 2006.

4.      The New York Department of State filings for Sojourn Records states that its Principal Executive Office is located at 405 Kirkman Avenue, Elmont, Nassau County, State of New York 11003.

5.      Defendant Mark Ambrosino, upon information and belief, is a resident of the State of New York.

6.      At all times stated herein, Mark Ambrosino is and has been Chief Executive Officer of Sojourn Records since its inception.

7.      At all times stated herein, and upon information and belief, Mark Ambrosino is a principal and owner of Sojourn Records since its inception.

8.      Defendant Thomas Laverack, upon information and belief, is a resident of the State of New York.

9.      At all times stated herein, and upon information and belief, Thomas Laverack is a principal, officer and owner of interest in Sojourn Records.

**BASIS OF JURISDICTION**

10.      Jurisdiction in the United States District Court, Southern District of New York is pursuant to 28 U.S.C.A. § 1331, as the questions at issue arise under the Constitution, laws, or treaties of the United States.

11.      At all times herein, stated Plaintiff Neshama Carlebach and Nedara Carlebach have been the copyright owner(s) of all created and derivative works including sound recordings, compositions, catalogs, music, songs and arrangements, (collectively at times herein referred to as "works"), that are subject to the NCRA and the NCLA, as defined under 17 U.S.C.A. § 101, 17 U.S.C.A. § 114, 17 U.S.C.A. § 201 (a.), (c.) and (d.)

12.      At all times herein, stated Plaintiff Neshama Carlebach has acted on behalf of and with the permission, authority and consent of Nedara Carlebach, who together constitute all copyright owners of all works referred to in the preceding paragraph including sound recordings, compositions,

catalogs, music, songs and arrangements that are subject to the SCLA, as defined under 17 U.S.C.A. § 101, 17 U.S.C.A. § 114, 17 U.S.C.A. § 201 (a.), (c.) and (d.)

13.     Jurisdiction in the United States District Court, Southern District of New York exists for the subject Complaint and causes of action set forth herein because Plaintiff's rights and remedies as owner of the exclusive copyrights to the works  are a matter of Federal Law set forth under 17 U.S.C.A. § 101, 17 U.S.C.A. § 114, 17 U.S.C.A. § 201 (a.), (c.) and (d.)

**UNDERLYING FACTS**

14.     Plaintiff Neshama Carlebach and defendants Mark Ambrosino first met in 1995.

15.     Plaintiff Neshama Carlebach hired Defendant Mark Ambrosino to perform in her band as a drummer and at some time thereafter Defendant Mark Ambrosino served as Plaintiff's music director and as Plaintiff's *de facto* personal manager.

16.     On or about October 26, 2006, Defendant Mark Ambrosino and Thomas Laverack filed or caused to be filed documents with the New York State Department of State including a certificate of incorporation for an entity named Humdrum Recordings, Inc.

17.     On or about August 22, 2007, Humdrum Recordings, Inc. changed its name to Sojourn Records, Inc.

18.     At all times herein stated Sojourn Records, Mark Ambrosino, Thomas Laverack and Neshama Carlebach engaged in a course of conduct including business transactions relating and pertaining to certain intellectual property, specifically music, recordings, compositions, catalogs of songs, compositions, musical works, productions, written works and derivative works.

19.     At all times herein stated Sojourn Records, Mark Ambrosino, Thomas Laverack and Neshama Carlebach entered into verbal and oral contracts relating and pertaining to certain intellectual property, specifically music, recordings, compositions, catalogs of songs, productions and derivative works.

20.     At all times herein stated Sojourn Records, Mark Ambrosino and Neshama Carlebach entered into written contracts relating and pertaining to certain intellectual property, specifically music, recordings, compositions, catalogs of songs, compositions, musical works, productions, written works and derivative works.

21.     At all times herein stated Neshama Carlebach authored, created and composed songs and has co-authored, co-created and collaborated with others in composing songs and is the owner of and/or had the exclusive rights to administer copyrights described under 17 U.S.C.A. § 106 to publish, record, perform, broadcast, sell, license and transfer recordings and written copies of certain original and derivative and collaborative musical works, including but not limited to certain recordings that are the subject of and referred to and or listed in the letter of understanding with "deal points" dated September 23, 2008, also referred to herein as the Neshama Carlebach Recording Agreement, ("NCRA.")

22.     The NCRA is attached hereto as Exhibit "A." and is incorporated by reference.

23.     At all times herein stated Neshama Carlebach authored, created and composed songs and has co-authored, co-created and collaborated with others in composing songs and is the owner of and/or had the exclusive rights to administer copyrights described under 17 U.S.C.A. § 106 to publish, record, perform, broadcast, sell, license and transfer Plaintiff's back catalog of recordings and written copies of original and derivative musical works including but not limited to Plaintiff's back catalog of recordings and derivative works that are the subject of and referred to and or listed in a letter of understanding and "deal points" dated March 26, 2010, also referred to herein as the Neshama Carlebach Licensing Agreement, ("NCLA.")

24.     The NCLA is attached hereto as Exhibit "B." and is incorporated by reference.

25.     Neshama Carlebach is the daughter of Shlomo Carlebach, the famous Jewish folk singer, performer, composer and recording artist, who is now deceased, having passed in 1994.

26.      At all times stated herein Plaintiffs Neshama Carlebach is and has been the owner, co-owner and/or has, as the Executor of the Estate of Shlomo Carlebach or in such other lawful capacity has acted with the permission, authority,  power and consent of all other, siblings, heirs and/or co-owners of the exclusive copyrights described under 17 U.S.C.A. § 106 to publish, broadcast, sell, license and transfer recordings and written copies of original and derivative musical works of Shlomo Carlebach, including but not limited to all recordings and derivative works that are the subject of and referred to and or listed in a letter of understanding with "deal points" dated July 20, 2009, also referred to herein as the Shlomo Carlebach Licensing Agreement, ("SCLA.")

27.      The SCLA is attached hereto as Exhibit "C." and is incorporated by reference.

## I.

## BREACH OF CONTRACT AND ACCOUNTING
## NESHAMA CARLEBACH RECORDING AGREEMENT

28.      In mid-2007, having developed a trust relationship based upon working together for over a decade, Plaintiff Neshama Carlebach approached Defendant Mark Ambrosino to discuss the possibility of Sojourn Records: (1.) recording and releasing her future recordings and (2.)  distributing her previously released recordings.

29.      On or about September 23, 2008, Plaintiff Neshama Carlebach, on behalf of herself as the Artist, and Defendant Mark Ambrosino, on behalf of Sojourn Records, ("SR"), signed a letter of understanding with certain "deal points" in contemplation of an exclusive recording agreement that would be executed in the future.  Exhibit A.

30.      The September 23, 2008 letter of understanding with "deal points" was by its clear and unambiguous language not a "full-fledged" agreement and was not fully negotiated, as it was intended to be in place only temporarily.

31.     The September 23, 2008 letter indeed stated that it did not include terms and conditions that are routinely contained in recording agreements, and that such terms and conditions were to be worked out between Plaintiff and Sojourn Records at a later time.

32.     At all times herein stated, the September 23, 2008 letter of understanding with "deal points" pertained to Plaintiff's sound recordings, compositions, catalogs, music, songs and arrangements, which Plaintiff is the owner and/or lawful administrator of the owner's exclusive copyrights as defined under 17 U.S.C.A. § 101, 17 U.S.C.A. § 114, 17 U.S.C.A. § 201 (a.), (c.) and (d.)

33.     The September 23, 2008 letter of understanding expressly stated that a "full-fledged" and "fully negotiated" agreement was to be "worked out" and executed by Plaintiff and Sojourn Records in the future.

34.     The letter of understanding included the following "deal points":

"Subject Albums/Reporting Term Exclusivity:

-- Artist and SR are to record and deliver to SR fully-mastered Recordings and complete artwork work for Album — SR to pay all third party recording costs (and shall reimburse itself for such third party costs and its own studio time from incoming revenues as costs to be reimbursed prior to the determination of net income -- and SR and Artist to work out in good faith what the studio charges are to be following completion of the recording." (Emphasis added.) Exhibit A. page 2.

And

Royalty/Compensation to Artist:

"-- Following SR's reimbursement of its direct, out-of-pocket costs incurred and paid in connection with the creation, artwork, production, manufacture, marketing, promotion, publicity, distribution, sale and other commercial exploitation of the Recordings, SR to pay the Artist one-half (½) of its net income"

"—SR shall not be entitled to reimburse itself for its general overhead or operating costs before determining Artist's portion of the net income."

Exhibit A. page 2.

And

### Accounting/Payment

"-- Accountings to be rendered forty-five (45) days following the close of each calendar quarter annual accounting period."

Exhibit A. page 2.

35.     After the September 23, 2008 letter of understanding signed by Plaintiff and by Sojourn Records, Plaintiff recorded two Albums with Sojourn Records.

36.     The first album titled HIGHER AND HIGHER was released on or about October 12, 2009.

37.     The second album titled EVERY LITTLE SOUL MUST SHINE was released on or about November 30, 2011.

38.     Upon information and belief, both albums have been distributed and sold by Sojourn Records as CDs and available for download purchase.

39.     Upon information and belief, Sojourn Records has received an unknown amount of revenue from the sale and distribution of the two albums, which has not been disclosed or accounted to Plaintiff as required under the September 23, 2008 letter of understanding with "deal points."

40.     Upon information and belief, Sojourn Records has not paid the required and agreed royalties to Plaintiff as set forth in the September 23, 2008 letter of understanding.

41.     Sojourn Records did not provide accountings to Plaintiff within 45 days following the close of each calendar quarter as specified in the letter of understanding.

42.     In fact, Sojourn Records did not provide any accounting of revenue, income, expenses, costs, net income or royalties to Plaintiff for nearly three years after Plaintiff's first Album was released on or about October 12, 2009.

43.     Plaintiff persistently requested accountings for a period of over three years after the completion of the first of two Albums but did not receive any accounting from Sojourn Records.

44.     The first statement that Plaintiff from Sojourn Records was received in December 26, 2012, some three years after completion of the first Album.

45.     The December 26, 2012 statement did not constitute an accounting, but merely stated gross sums for vaguely described categoric items, without any detail, which Sojourn Records deducted from revenues it purported to have received from the sale and distribution of Plaintiff's work.

46.     Sojourn Records' December 26, 2012 statement included charges against net income in the staggering amount of Two Hundred Fourteen Thousand, Six Hundred Sixty Dollars, ($214,660.00), without any explanation or documentation.

47.     The December 26, 2012 statement included, *inter alia*, charges for use of Sojourn Records' studio for a certain or estimated number of days at the rate of One Thousand Dollars ($1,000.00) per day but provided insufficient details or explanation of what was done or how many hours or portions of hours or days the studio was used.

48.     The net income calculated by Sojourn Records, after deducting all of the undocumented, unauthorized and unexplained charges produced a royalty payment to Plaintiff of less than two hundred dollars in 2017, despite substantial revenue Sojourn Records received from the sale of Plaintiff's music.

49.     While the September 23, 2008 letter of understanding with "deal points" allows Sojourn Records to reimburse itself for its own studio time, Sojourn Records is expressly not entitled to reimbursement for its general overhead or operating costs.

50.     Upon information and belief, One Thousand Dollars ($1,000.00), per day for nearly two hundred days constitutes a gross misrepresentation by Sojourn Records of the appropriate and reasonable charges for the use of its own studio.

51.     By charging for studio time at the rate of One Thousand Dollars ($1,000.00) per day, for the use of its own studio, Sojourn Records is attempting to obtain reimbursement for its general overhead or operating costs, in clear violation and breach of the terms and conditions of the "deal points" letter of understanding.

52.      Nowhere in the September 23, 2008 letter of understanding with "deal points" or elsewhere was it ever disclosed to Plaintiff that One Thousand Dollars ($1,000.00), per day was to be charged for studio time in Sojourn Records' own studio.

53.     The One Thousand Dollar ($1,000.00) per day rate for the use of Sojourn Records' studio was never negotiated between Plaintiff and Sojourn.

54.     Indeed, Sojourn Records at no time afforded or even offered Plaintiff any opportunity to work out in good faith with Sojourn Records what the studio charges were to be prior to or following the completion of recording the two albums, as expressly required by the clear and unambiguous terms and conditions stated in the September 23, 2008 letter of understanding with "deal points."

55.     By failing to negotiate with Plaintiff and failing to provide Plaintiff any opportunity to work out in good faith with Sojourn Records what the studio charges were to be following completion of the recording, Sojourn Records breached the clear and unambiguous terms and conditions stated in the "deal points" letter of understanding.

56.     The December 26, 2012 statement from Sojourn Records includes charges in the amount of Twelve Thousand, Six Hundred and Ninety-Three Dollars, ($12,693.00) for a publicist, but provided no information as to the name of the publicist, what services were performed, when and on what dates such publicist performed any services or why this cost was incurred.

57.     Plaintiff was at no time consulted or advised that a publicist was to be retained or how much such publicist was to be paid prior to receiving the December 26, 2012 statement.

58.      By failing to provide Plaintiff any information as to the cost of retaining a publicist until December 26, 2012, Sojourn Records breached the clear and unambiguous terms and conditions to provide an accounting within 45 days of end of each calendar quarter when such costs were incurred, as stated in the "deal points" letter of understanding.

59.     The December 26, 2012 statement from Sojourn Records includes charges in the amount of Nine Thousand Three Hundred, ($9,375.00) for a "marketing consultant," but no information as to the name of the marketing consultant, what services were performed or why this cost was incurred.

60.     Plaintiff was at no time consulted or advised that a "marketing consultant" was to be retained or how much such marketing consultant was to be paid prior to receiving the December 26, 2012 statement.

61.     Upon information and belief, the "marketing consultant" hired by Sojourn Records was George Howard, an owner, principal or employee of Sojourn Records. By failing to provide Plaintiff any information as to the cost of retaining a marketing consultant until December 26, 2012, Sojourn Records breached the clear and unambiguous terms and conditions to provide an accounting within 45 days of end of each calendar quarter when such costs were incurred, as stated in the "deal points" letter of understanding.

62.     The December 26, 2012 statement clearly did not satisfy the requirement that accountings were "to be rendered forty-five (45) days following the close of each calendar quarter…"

63.     Not only was the December 26, 2012 statement provided three years after the completion of the first Album, no interim statements or accountings of any cost, expense, income or royalty were provided at any time prior to the December 26, 2012 statement.

64.     After receiving the December 26, 2012 statement, Plaintiff continued to request actual accountings from Sojourn Records, as expressly required in the September 23, 2008 letter of understanding with "deal points," but no fully detailed accounting was ever received.

65.     On or about September 29, 2015 Plaintiff and Mark Ambrosino exchanged email messages which included Plaintiff's notice to Sojourn that the September 23, 2008 letter of understanding with "deal points" as well as the two other letters of understanding concerning Plaintiff's back catalog and Shlomo Carlebach's catalog were terminated.

66.     No further accounting details were provided by Sojourn Records, despite multiple repeated requests over a period of multiple years.

67.     In reply to Plaintiff's September 29, 2015 email giving notice of termination of the three letters of understanding attached hereto as Exhibits A, B and C, Sojourn Records demanded Three Million Dollars ($3,000,000.00), without any explanation for such demand.

68.     On or about July 11, 2018, Plaintiff forwarded letters to Sojourn Records, again stating that the three letters of understanding were terminated and demanding a full and accurate accounting.

69.     On or about July 25, 2018, Plaintiff received from Sojourn Records a statement for costs and expenses titled "2017 and beyond."

70.     Like the December 26, 2012 statement, the July 25, 2017 statement did not provide any details or explanation for the expenses and costs that Sojourn Records subtracted from Album revenue.

71.     On or about August 20, 2018, Plaintiff received correspondence from Sojourn Records' attorney in which inaccurate and inflated figures were again stated, instead of an accurate and reasonably detailed accounting as required under the letter of understanding and "deal points."

72.      By failing to provide Plaintiff any sufficiently detailed accounting as to the cost of retaining a marketing consultant and failing to obtain Plaintiff's approval for such expense Sojourn

Records breached the clear and unambiguous terms and conditions stated in the "deal points" letter of understanding.

73.     Based upon information and belief, Sojourn Records created and/or bought merchandise that it called the "Neshama Line" and sold and/or resold to Plaintiff's fans at live events and online. Such merchandise included, but was not limited to, jewelry and candles customized with the initial "N" for Plaintiff's first name. Upon information and belief, such sales were so successful that at times Sojourn Records sent its own personnel on the road, at its own cost, to Plaintiff's concerts in order to sell the "Neshama Line." Such sale and resale of merchandise was not covered by any written agreement between Plaintiff and Sojourn Records. Despite persistent requests by Plaintiff for an accounting and share of income from the "Neshama Line" merchandise sales, Sojourn Records never made payment to Plaintiff for any merchandise sold under the "Neshama Line." The first time Plaintiff received any accounting regarding the sale of merchandise was in a communication from Sojourn Records' lawyer on November 21, 2018 in response to Plaintiff's attorney's request for same. Upon information and belief, Sojourn Records' assertion that the merchandise sales were loss leaders and free giveaways with the purchase of Plaintiff's CDs is inaccurate and contradicted by Sojourn Records' advertisements for the sale for merchandise on its own website and the large amounts of cash sales at Plaintiff's musical engagements that warranted the cost of travel expenses for Sojourn Records' personnel to attend and sell at such events.

74.     Based upon gross misrepresentations in Sojourn Records' inaccurate, insufficient, overstated and extremely belated accounting, Plaintiff has suffered damages due to loss and underpayment of royalties owed under the terms and conditions set forth in the September 23, 2008 letter of understanding.

75.     Specifically, Plaintiff is entitled to one half of all net income from the same of her music and merchandise, based upon a fair and reasonable accounting of costs and expenses as agreed by the parties.

76.     Because Sojourn Records has overstated, misrepresented or improperly imposed charges against the net income from the sale of Plaintiff's music and merchandise, Plaintiff has suffered loss and damages, plus interest and other damages such as but not limited to attorney fees and costs of this action.

77.     Wherefore, Plaintiff demands judgment against Defendants in the amount to be determined upon a full audit and accounting of Sojourn Records' actual expenses and costs, plus interest and other damages such as but not limited to attorney fees and costs of this action.

II

**TERMINATION OF THE NESHAMA
CARLEBACH RECORDING AGREEMENT**

78.     Plaintiff repeats and reiterates all allegations set forth in paragraphs 1- 77, as if set forth in full and further alleges;

79.     That the aforementioned letter of understanding with "deal points" never evolved into a "full-fledged" recording agreement.

80.     Additional and other terms and conditions that are routinely contained in agreements in the nature of recording agreements, such as: termination, accounting, independent audit, arbitration of discrepancies.

81.     A "full-fledged" recording agreement would routinely include, among other things, that Plaintiff, as the Artist, would have to approve expenditures that would be deducted from Album revenue and significantly affect net income and royalties.

82.     The letter of understanding with "deal points" contains vague, ambiguous and conflicting language which renders it impossible to determine the intent of the parties.

83. For example, under "Warranties/Representations/Indemnity" the letter of understanding and "deal points" states:

"(iii) Artist shall not re-record the musical compositions contained in the Recordings prior to the later of (i) two (2) to years following the date of delivery to SR or (ii) two (2) years following the end of the term of this agreement." (Emphasis added.)

Exhibit A. page 2.

84. The underlined language in the preceding paragraph is vague and ambiguous because the letter of understanding with "deal points" does not state a contract term.

85. As the end of the term of any agreement or agreements, terms and conditions set forth in the September 23, 2008 letter of understanding cannot be unambiguously determined by the language used in said letter, any such agreements, terms and/or conditions are terminable by either party upon notice to the other.

86. Upon information and belief Sojourn Records has materially breached of the subject letter of understanding, including but not limited to: failure to provide sufficient accounting to Plaintiff, failure to negotiate a "full-fledged" recording agreement which was to have included additional terms and conditions routinely contained in agreements of this nature and failure by Sojourn Records to "work out in good faith what the studio charges are to be following completion of the recording," as expressly required.

87. Plaintiff has repeatedly given written notice to terminate the September 23, 2008 letter of understanding with "deal points."

88. Upon information and belief neither Sojourn Records nor Plaintiff have any intention to continue the September 23, 2008 letter of understanding.

89. Neither party intends to work out a "full-fledged" agreement which would contain the "deal points" listed in the September 23, 2008 letter plus "such other terms and conditions that are

routinely contained in exclusive licensing agreements," as was the stated and fundamental purpose of the September 23, 2008 letter of understanding.

90.     In view of the ambiguities, inconsistencies and vagueness of language in the September 23, 2008 letter of understanding and the several material breaches of agreement(s), terms and conditions set forth therein, said letter of understanding should be declared terminated by this Court.

91.     Wherefore, this Court should declare and order that the September 23, 2008 letter of understanding with "deal points" has been and is terminated.

III

**BREACH OF CONTRACT AND ACCOUNTING**
**NESHAMA CARLEBACH BACK CATALOG AGREEMENT**

92.     Plaintiff repeats and reiterates all allegations set forth in paragraphs 1- 91, as if set forth in full and further alleges;

93.     Prior to signing the September 23, 2008 letter of understanding pertaining to recording Plaintiff's new musical works, Plaintiff had already recorded and released several Albums and Individual Recordings.

94.     Between approximately 1996 through 2008, Plaintiff recorded and released six albums which constitute Plaintiff's back catalog.

95.     In or about 2007, Sojourn Records began distributing Plaintiff's back catalog of music based upon an oral agreement between Plaintiff and Defendants.

96.     It was the practice, custom and course of conduct for Sojourn Records to pay royalties to Plaintiff on a "Fifty-Fifty" net profit after costs basis for the sale of Plaintiff's back catalog of music.

97.     As of March 26, 2010, Plaintiff, as licensor, and Sojourn Records ("SR"), signed the letter of understanding with "deal points" pertaining to the licensing of Plaintiff's back catalog for the release, re-release, sale and distribution exclusively by Sojourn Records.  Exhibit B.

98. The six albums that Plaintiff had previously recorded and released, that are subject to the March 26, 2010 letter of understanding pertaining to the licensing of plaintiff's back catalog, are listed on Schedule A. attached to Exhibit B.

99. The March 26, 2010 letter of understanding with "deal points" was by its clear and unambiguous language not a "full-fledged" agreement and was not fully negotiated, as it was intended to be in place only temporarily.

100. The March 26, 2010 letter indeed stated that it did not include terms and conditions that are routinely contained in exclusive licensing agreements, and that such terms and conditions were to be worked out between Plaintiff and Sojourn Records at a later time.

101. The March 26, 2010 letter of understanding expressly stated that a "full-fledged" and "fully negotiated" licensing agreement was to be "worked out" and executed by Plaintiff and Sojourn Records in the future.

102. The March 26, 2010 letter of understanding includes the following language:

Subject Albums/Recordings/Licensing:

"…… SR to pay all expenses related to the preparation for release of the Recordings. This includes, but is not limited to, costs incurred for the location of masters, the restoration (baking of tapes, etc.), remixing, re-mastering, and all artwork preparation and production. The Albums and Recordings contained thereon and licensed herein are listed as Schedule A.

And

"-- SR shall reimburse itself for such costs and its own studio time, if any, from Licensor's royalties prior to any royalty payments (as defined below) being due. Additionally, SR will reimburse itself for 50% of any expenses incurred from so-called independent marketing expenses prior to any royalty payments being due."

Exhibit B. Page 2

103.     The March 26, 2010 letter of understanding expressly states that Sojourn Records was to provide accountings "**60 days following the close of each calendar semi-annual accounting period, including detailed statement of all out-of-pocket costs incurred**."  (Emphasis added. Exhibit B.)

104.     Sojourn Records failed to render any accountings for any semi-annual period.

105.     Sojourn Records has at no time provided a detailed statement of "out-of-pocket" costs.

106.     The Release Commitment provision of the March 26, 2010 letter of understanding with "deal points" was left blank with respect to Sojourn Records' obligations to release the first Album and additional Albums from Plaintiff's back catalog.

> Release Commitment:
>
> "—SR shall commercially release the first Album no later_____, provided that all necessary materials to manufacture are supplied SR no later than _____,
>
> With respect to the additional Albums, SR to commercially release them not later _____ provided that all necessary materials to manufacture are supplied to SR no later than _____ such time(s) to be extended appropriately should any such 6 month release period expire during the holiday sales season, which shall be defined as November 15th through January 15th.

Exhibit B. Page 3/4

107.     The March 26, 2010 letter of understanding contained terms that did not apply to the catalog re-release agreement discussed by the parties, such as the above-referenced Release Commitment provision, because the March 26, 2010 letter of understanding used the same form of "deal points" from the July 20, 2009 letter of understanding between Sojourn Records and Plaintiff, on behalf of her father's estate, with respect to Shlomo Carlebach's back catalog of music.

108.  After the March 26, 2010 letter of understanding signed by Plaintiff and by Sojourn Records, Sojourn Records re-released the Albums listed on Schedule A.

109.  Upon information and belief, album title: HA NESHAMA SHEL SHLOMO, Plaintiff's first album featuring Plaintiff and her famous father, originally released in 1997 and listed among Plaintiff's back catalog on Schedule A of Exhibit B was re-released by Sojourn Records and remains "in print" on CD and available for download purchase.

110.  Upon information and belief, Sojourn Records has sold an unknown number of copies of HA NESHAMA SHEL SHLOMO and has received substantial revenue from such sales but has not provided an adequate accounting of such sales and revenue to Plaintiff.

111.  Sojourn Records has never provided a detailed accounting of out of pocket costs and royalties for HA NESHAMA SHEL SHLOMO, as required in the March 26, 2010 letter of understanding and deal points.

112.  Sojourn Records did not provide accountings to Plaintiff within 60 days following the close of each calendar semi-annual period as specified in the letter of understanding.

113.  Upon information and belief Sojourn Records has underpaid and has withheld payment of royalties due and owing to Plaintiff for HA NESHAMA SHEL SHLOMO.

114.  Upon information and belief, album title: SOUL, Plaintiff's debut solo album, originally released in 1996 and listed among Plaintiff's back catalog on Schedule A of Exhibit B was re-released by Sojourn Record and remains "in print" on CD and available for download purchase.

115.  Upon information and belief, Sojourn Records has sold an unknown number of copies of SOUL and has received substantial revenue from such sales.

116.  Sojourn Records has never provided a detailed accounting of out of pocket costs and royalties for this Album, as required in the March 26, 2010 letter of understanding and deal points.

117. Sojourn Records did not at provide accountings to Plaintiff within 60 days following the close of each calendar semi-annual period as specified in the letter of understanding.

118. Sojourn Records did not at provide accountings to Plaintiff within 60 days following the close of each calendar semi-annual period as specified in the letter of understanding.

119. Upon information and belief Sojourn Records has underpaid and has withheld payment of royalties due and owing to Plaintiff for SOUL.

120. Upon information and belief, album title: DANCING WITH MY SOUL, Plaintiff's second solo album, originally released in 2000 and listed among Plaintiff's back catalog on Schedule A of Exhibit B was re-released by Sojourn Records remains "in print" on CD and available for download purchase.

121. Upon information and belief, Sojourn Records has sold an unknown number of copies of DANCING WITH MY SOUL and has received substantial revenue from such sales but has not reported or accounted such information to Plaintiff.

122. Sojourn Records has never provided a detailed accounting of out of pocket costs and royalties for DANCING WITH MY SOUL, as required in the March 26, 2010 letter of understanding and deal points.

123. Sojourn Records did not at provide accountings to Plaintiff within 60 days following the close of each calendar semi-annual period as specified in the letter of understanding.

124. Upon information and belief Sojourn Records has underpaid and has withheld payment of royalties due and owing to Plaintiff for DANCING WITH MY SOUL.

125. Upon information and belief, album title: ANI SHELACH, Plaintiff's third solo album, originally released in 2001 and listed among Plaintiff's back catalog on Schedule A of Exhibit B was re-released by Sojourn Records and remains "in print" on CD and available for download purchase.

126. Upon information and belief, Sojourn Records has sold an unknown number of copies of ANI SHELACH and has received substantial revenue from such sales but has not reported or accounted such information to Plaintiff.

127. Sojourn Records has never provided a detailed accounting of out of pocket costs and royalties for ANI SHELACH, as required in the March 26, 2010 letter of understanding and deal points.

128. Sojourn Records did not at provide accountings to Plaintiff within 60 days following the close of each calendar semi-annual period as specified in the letter of understanding.

129. Upon information and belief Sojourn Records has underpaid and has withheld payment of royalties due and owing to Plaintiff for ANI SHELACH.

130. Upon information and belief, album title: JOURNEY, Plaintiff's fourth solo album, originally released in 2004 and listed among Plaintiff's back catalog on Schedule A of Exhibit B was re-released by Sojourn Records in remains "in print" on CD and available for download purchase.

131. Upon information and belief, Sojourn Records has sold an unknown number of copies of JOURNEY and has received substantial revenue from such sales but has not reported or accounted such information to Plaintiff.

132. Sojourn Records has never provided a detailed accounting of out of pocket costs and royalties for JOURNEY, as required in the March 26, 2010 letter of understanding and deal points.

133. Sojourn Records did not at provide accountings to Plaintiff within 60 days following the close of each calendar semi-annual period as specified in the letter of understanding.

134. Upon information and belief Sojourn Records has underpaid and has withheld payment of royalties due and owing to Plaintiff for JOURNEY.

135. Upon information and belief, album title: ONE AND ONE, Plaintiff's fifth solo album, originally released in 2008 and listed among Plaintiff's back catalog on Schedule A of Exhibit B was re-released by Sojourn Records and remains "in print" on CD and available for download purchase.

136.    Upon information and belief, Sojourn Records has sold an unknown number of copies of ONE AND ONE and has received substantial revenue from such sales but has not reported or accounted such information to Plaintiff.

137.    Sojourn Records has never provided a detailed accounting of out of pocket costs and royalties for ONE AND ONE, as required in the March 26, 2010 letter of understanding and deal points.

138.    Sojourn Records did not at provide accountings to Plaintiff within 60 days following the close of each calendar semi-annual period as specified in the letter of understanding.

139.    Upon information and belief Sojourn Records has underpaid and has withheld payment of royalties due and owing to Plaintiff for ONE AND ONE.

140.    In fact, Sojourn Records did not provide any detail of accounting of revenue, income, expenses, costs, net income or royalties to Plaintiff for over two and one half years after Sojourn Records re-released Plaintiff's back catalog including the album titles listed on Schedule A attached to the March 26, 2010 letter of understanding pertaining to the full-fledged licensing agreement that was anticipated by Plaintiff when it was signed by her.

141.    Plaintiff persistently requested accountings for a period of two and one half years following the re-release of Plaintiff's back catalog albums, but did not receive any accounting from Sojourn Records.

142.    The first statement that Plaintiff from Sojourn Records was received in December 26, 2012.

143.    The December 26, 2012 statement did not constitute an accounting, but merely stated gross sums for vaguely described categoric items, without any detail, which Sojourn Records deducted from revenues it purported to have received from the sale and distribution of Plaintiff's back catalog recordings.

144.     Sojourn Records' December 26, 2012 statement included charges against net income in the staggering amount of Two Hundred Fourteen Thousand, Six Hundred Sixty Dollars ($214,660.00), without any explanation or documentation.

145.     The re-release of Plaintiff's back catalog, which consisted entirely of finished completed recordings, did not require the use of Sojourn Records' studio.

146.     The net income after Sojourn Records' undocumented, unauthorized and unexplained deductions produced a royalty payment to Plaintiff of less than two hundred dollars.

147.     The March 26, 2010 letter of understanding with "deal points" pertaining to the anticipated licensing agreement provided the following:

Royalty/Compensation to Licensor:

"-- In connection with standard sales, SR will pay Licensor 15% of the SRLP less standard packaging and free good deductions.  Packaging deductions are applicable only to physical goods. The packaging deduction will reduce the royalty rate by 20% and will apply only to physical goods. Free goods are only applicable to physical goods, and the free goods deduction will reduce the total amount of physical goods with respect to the most 2 recent statements and not more than once in any year), which limitations shall not apply in the case of misrepresentation by SR. "

Mechanical Royalties:

-- the per-song rate on controlled compositions (songs written and/or owned by Licensor) is 75% of statutory minimum in USA/Canada (as of the date of initial commercial release of each album) (or, in connection with Licensor's arrangements of public domain compositions, that percentage ascribed by ASCAP, BMI or SESAC to Licensor's arrangement thereof) with maximum aggregate mechanical royalty payments by SR for all musical compositions contained on each Album of ten 10 times controlled

composition rate for full-length releases.

Exhibit B. Page 3.

148.     Sojourn Records has at no time provided Plaintiff any detail, explanation or breakdown as to its calculation of Royalty/Compensation to Licensor or Mechanical Royalties, as described in the "deal points" included in the March 26, 2010 letter of understanding pertaining to a "full-fledged" exclusive licensing agreement that was at one time anticipated but never fully negotiated or entered into.

149.     Indeed, Sojourn Records at no time afforded or even offered Plaintiff any opportunity to work out in good faith with Sojourn Records a "full-fledged" agreement which was to have included the "deal points" summarized in the March 26, 2010 letter and "such other terms and conditions as are routinely contained in" similar "exclusive licensing agreements." Exhibit B., page 1.

150.     By failing to negotiate with Plaintiff and failing to provide Plaintiff any opportunity to work out in good faith with Sojourn Records such other terms and conditions, in addition to the "deal points" as are routinely contained in similar exclusive licensing agreements, Sojourn Records breached the clear and unambiguous terms and conditions stated in the "deal points" letter of understanding.

151.     The December 26, 2012 statement from Sojourn Records includes charges in the amount of Twelve Thousand, Six Hundred and Ninety-Three Dollars, ($12,693.00) for a publicist, but provided no information as to the name of the publicist, what services were performed, when and on what dates such publicist performed any services or why this cost was incurred.

152.     Plaintiff was at no time consulted or advised that a publicist was to be retained or how much such publicist was to be paid prior to receiving the December 26, 2012 statement.

153.     By failing to provide Plaintiff any information as to the cost of retaining a publicist within 60 days of the end of the calendar semi-annual accounting period when such charges were

incurred, Sojourn Records breached the clear and unambiguous terms and conditions stated in the "deal points" letter of understanding.

154. The December 26, 2012 statement from Sojourn Records includes charges in the amount of Nine Thousand Three Hundred, ($9,375.00) for a marketing consultant, but no information as to the name of the marketing consultant, what services were performed or why this cost was incurred.

155. Upon information and belief, the marketing consultant that Sojourn Records hired was George Howard, an owner, principal or employee of Sojourn Records. The first time Plaintiff received any accounting regarding George Howard as the "marketing consultant" for Plaintiff's music was in a response from Sojourn Records' attorney on November 21, 2018, elicited by Plaintiff's counsel's request for evidence supporting Sojourn Records' hiring of a marketing consultant as required under the March 26, 2010 letter of understanding with "deal points." Notably, all but one month of George Howard's consulting fees were incurred by Sojourn Records prior to entering into the March 26, 2010 letter of understanding with "deal points." Sojourn Records sought to charge Plaintiff for a marketing consultant for two (2) years prior to entering into the NCLA. Moreover, for the George Howard consulting fees allegedly incurred during the term of the NCLA, Sojourn Records provides no specificity with regard to George Howard's alleged work on Plaintiff's behalf, providing only a statement indicating payment of Two Thousand Dollars ($2,000.00) for the month of June 2010.

156. Plaintiff was at no time consulted or advised that a marketing consultant was to be retained or how much such marketing consultant was to be paid prior to receiving the December 26, 2012 statement.

157. The December 26, 2012 statement clearly did not satisfy the requirement that accountings were "to be rendered sixty (60) days following the close of each calendar semiannual accounting period…" Exhibit B, page 2.

158.    Not only was the December 26, 2012 statement provided more than two and a half years after the March 25, 2010 letter of understanding was signed, no interim statements or accountings of any cost, expense, income or royalties for Plaintiff's back catalog were provided at any time prior to the December 26, 2012 statement.

159.    After receiving the December 26, 2012 statement, Plaintiff continued to request actual accountings from Sojourn Records, as expressly required in the September 23, 2008 letter of understanding with "deal points," but no fully detailed accounting was ever received.

160.    On or about September 29, 2015 Plaintiff and Mark Ambrosino exchanged email messages which included Plaintiff's notice of termination of the March 26, 2010 letter of understanding with "deal points" pertaining to an anticipated exclusive licensing agreement for Plaintiff's back catalog, as well as the termination of the two other letters of understanding concerning Plaintiff's new recordings and Shlomo Carlebach's catalog.

161.    No further accounting details were provided by Sojourn Records, despite multiple repeated requests over a period of multiple years.

162.    In reply to Plaintiff's September 29, 2015 email giving notice of termination of the three letters of understanding attached hereto as Exhibits A, B and C, Sojourn Records demanded Three Million Dollars.

163.    On or about July 11, 2018, Plaintiff forwarded letters to Sojourn Records, again stating that the three letters of understanding were terminated and demanding a full and accurate accounting.

164.    On or about July 25, 2018, Plaintiff received from Sojourn Records a statement for costs and expenses titled "2017 and beyond."

165.    Like the December 26, 2012 statement, the July 25, 2017 statement did not provide any details or explanation for the expenses and costs that Sojourn Records subtracted from Album revenue.

166.     On or about August 20, 2018, Plaintiff received correspondence from Sojourn Records' attorney in which inaccurate and inflated figures were again stated, instead of an accurate and reasonably detailed accounting as required under the letter of understanding and "deal points."

167.     The March 26, 2010 letter of understanding includes the following:

Accountings/Payment:

-- Accountings to be rendered 60 days following the close of each calendar semi-annual accounting., **Including detailed statement of all out-of-pocket costs incurred.**

-- Licensor shall have the right to object to accountings and bring suit therefore up to 2 years after rendering and bring suit up to 1 year following SR's receipt of Licensor's written objection; **however, these limitations shall not apply in the case of misrepresentation by SR**. (Emphasis added.)

Exhibit B, Page 2.

168.      By failing to provide Plaintiff with a timely and sufficiently detailed accounting as to the cost of retaining a marketing consultant within 60 days of the end of the calendar semi-annual accounting period when such charges were incurred, Sojourn Records breached the clear and unambiguous terms and conditions stated in the "deal points" letter of understanding.

169.     Based upon gross misrepresentations in Sojourn Records' inaccurate, insufficient, overstated and extremely belated accounting Plaintiff is entitled to a further and more complete accounting to determine damages suffered by Plaintiff due to loss and underpayment of royalties owed under the terms and conditions set forth in the March 26, 2010 letter of understanding pertaining to the anticipated, but never executed full-fledged exclusive licensing agreement for Plaintiff's back catalog.

170.     Upon information and belief Plaintiff is owed substantial amounts of moneys for payment of royalties for the sale of her back-catalog albums and such sums must be calculated upon a full detailed audit and accounting of Sojourn Records' revenues and actual costs.

171.     Because Sojourn Records has overstated, misrepresented or improperly imposed charges against the net income from the sale of Plaintiff's music, Plaintiff has suffered loss and damages, plus interest and other damages such as but not limited to attorney fees and costs of this action.

172.     Wherefore, Plaintiff demands judgment against Defendants in the amount to be determined upon a full audit and accounting of Sojourn Records' actual expenses and costs plus interest and other damages such as but not limited to attorney fees and costs of this action.

### IV.

### TERMINATION OF THE NESHAMA
### CARLEBACH LICENSING AGREEMENT

173.     Plaintiff repeats and reiterates all allegations set forth in paragraphs 1- 172, as if set forth in full and further alleges;

174.     That the aforementioned March 26, 2010 letter of understanding with "deal points" pertaining to an anticipated exclusive licensing agreement for Plaintiff's back catalog never evolved into a "full-fledged" licensing agreement.

175.     Additional and other terms and conditions that are routinely contained in agreements in the nature of licensing agreements, such as; termination, accounting, independent audit, arbitration of discrepancies were never incorporated into a full-fledged exclusive licensing agreement.

176.     A "full-fledged" licensing agreement would routinely include, among other things that Plaintiff, as Licensor, would have to approve expenditures that would be deducted from Album revenue and significantly affect net income and royalties.

177.     The March 26, 2010 letter of understanding with "deal points" contains vague, ambiguous and conflicting language which renders it impossible to determine the intent of the parties.

178.     The March 26, 2010 letter of understanding contained terms that did not apply to the catalog re-release agreement discussed by the parties, because the March 26, 2010 letter of understanding used the same form of "deal points" from the July 20, 2009 letter of understanding

between Sojourn Records and Plaintiff, on behalf of her father's estate, with respect to Shlomo Carlebach's back catalog of music.

179.     The March 26, 2010 letter of understanding pertaining to the licensing of Shlomo Carlebach's work appears to be based on the same document as the July 20, 2009 letter of understanding, which pertains to the licensing of Shlomo Carlebach's music, (Exhibit C, below), thus some of the "deal points" included in the March 26, 2010 letter of understanding were not relevant or appropriate for purposes of licensing  Plaintiff's back catalog of work.

180.     Upon information and belief neither Sojourn Records nor Plaintiff have any intention to continue the March 26, 2010 letter of understanding.

181.     Specifically, neither party intends to work out a "full-fledged" agreement which would contain the "deal points" listed in the March 26, 2010 letter plus "such other terms and conditions that are routinely contained in exclusive licensing agreements," as was the stated and fundamental purpose of the March 26, 2010 letter of understanding.

182.     March 26, 2010 letter of understanding pertaining to Plaintiff's back catalog includes:

Term:

-- SR Will have the exclusive license to exploit the Albums and the Recordings throughout the Territory for a period of 10 years from the end of the calendar semi-annual accounting. During which the last Album to be released hereunder is commercially released by SR. In no circumstances will any Recordings revert to the Licensor while any additional Albums are still under license. As our shell had a non-exclusive "sell off" period of six (6) months following the end of the Term to sell off any physical product remaining on and at the end of the Term.

Exhibit B, Page 2.

183.  The forgoing description of Term of Sojourn Records' right to license Plaintiff's back catalog is ambiguous, vague, unconscionable, irrelevant and unenforceable.

184.  Sojourn Records has not, as of the date of this Complaint, provided a suitable, accurate or adequate accounting to Plaintiff.

185.  Moreover, in view of Sojourn Records' material breach of this agreement by its failure to provide sufficient accounting at any time and failure(s) to pay royalties as required by the letter of understanding, defeats and nullifies any right(s) on the part of Sojourn Records to enforce the Term provision, thus the agreement must be deemed terminated upon notice by Plaintiff.

186.  Wherefore, this Court should declare and order that the March 26, 2010 letter of understanding with "deal points" pertaining to an anticipated exclusive licensing agreement pertaining to Plaintiff's back catalog of work, has been and is terminated as of September 29, 2015.

**V.**

**BREACH OF CONTRACT AND ACCOUNTING**
**SHLOMO CARLEBACH BACK CATALOG AGREEMENT**

187.  Plaintiff repeats and reiterates the allegations in paragraphs 1-186 as if set forth in full and further alleges;

188.  Shlomo Carlebach was born in Berlin, Germany in 1925, the son of a Rabbi.  In 1939 he and his family escaped Nazi-controlled Vienna and came to New York.  Shlomo Carlebach was a great musician, storyteller and famous singer of traditional Jewish songs.  He left a legacy of music recorded over more than thirty years.

189.  Plaintiff Neshama Carlebach and Nedara Carlebach are Shlomo Carlebach's daughters and are the only owners of the exclusive copyrights described under 17 U.S.C.A. § 106 to publish, broadcast, sell, license and transfer recordings and written copies of original and derivative musical works of Shlomo Carlebach.

190. At all times stated herein Plaintiffs Neshama Carlebach is and has been the Executor of the Estate of Shlomo Carlebach and has acted with the full permission, authority, power and consent of Nedara Carlebach with respect to administering the exclusive copyrights described under 17 U.S.C.A. § 106 to publish, broadcast, sell, license and transfer recordings and written copies of original and derivative musical works of Shlomo Carlebach.

191. In or around 2007, with Plaintiff's permission and consent, Defendant Mark Ambrosino moved certain items relating to Shlomo Carlebach, including, without limitation, original master recordings, tape reels, hard-drives, flash drives, cassettes, compact discs, vinyl records, original and reproduced artwork files, promotional photos, posters, drawings, sketches, renderings, photographs, and audio-visual recordings (collectively, the "Shlomo Materials"), into an air-pressured, temperature-controlled storage room for safekeeping.

192. In or around 2007, Sojourn Records began distributing Shlomo Carlebach's back catalog of music based on an oral agreement between the parties.

193. It was the practice, custom and course of conduct for Sojourn Records to pay royalties to Plaintiff on a "Fifty-Fifty" net profit after costs basis for the sale of the Shlomo Materials.

194. As of, on or about July 20, 2009, Plaintiff Neshama Carlebach and Defendant Mark Ambrosino signed a letter of understanding regarding certain "deal points" in contemplation of an exclusive licensing agreement for Sojourn Records to re-release three previously released Albums of Shlomo Carlebach's recorded music, which was to be further negotiated in the future and worked out into a "full-fledged" agreement.  Exhibit C.

195. The three Albums were to be selected by Sojourn Records from the listing attached to the July 20, 2009 letter of understanding.  Exhibit C. Schedule A.

196. The July 20, 2009 letter of understanding regarding certain "deal points" was addressed to Neshama Carlebach and Nedara Carlebach.

197.     Plaintiff Neshama Carlebach signed the July 20, 2009 on behalf of herself and with full permission, consent and authority of Nedara Carlebach as owners of the works and back catalog of Shlomo Carlebach that were to be re-released by Sojourn Records.

198.     The July 20, 2009 letter of understanding with "deal points" was by its clear and unambiguous language not a "full-fledged" agreement and was not fully negotiated, as it was intended to be in place only temporarily.

199.     The July 20, 2009 letter indeed stated that it did not include terms and conditions that are routinely contained in recording agreements, and that such terms and conditions were to be worked out between Plaintiff and Sojourn Records at a later time.

200.     The July 20, 2009 letter of understanding expressly stated that a "full-fledged" and "fully negotiated" agreement was to be "worked out" and executed by Plaintiff and Sojourn Records in the future.

201.     The letter of understanding included the following "deal points":

Subject Albums/Recordings/Licensing:

-- SR shall release 3 Albums. SR to pay all expenses related to the preparation for release of the Recordings. This includes, but is not limited to, costs incurred for the location of masters, the restoration (baking of tapes, etc.), remixing, re-mastering, and all artwork preparation and production…….

-- SR shall reimburse itself for such costs and its own studio time, if any, from Licensor's royalties prior to any royalty payments (as defined below) being due. Additionally, SR will reimburse itself for 50% of any expenses incurred from so-called independent marketing expenses prior to any royalty payments being due.

Exhibit C., page 2.

And

<u>Additional Recordings</u>

-- Licensor agrees to (i) provide SR with all of the recordings that it has in its possession that it owns other than the Album referred to above and (ii) use reasonable efforts to assist SR are in obtaining all of the recordings that Licensor owns so that SR can review such recordings for potential licensing and commercial release. ...... All Additional Records released by SR will be subject to the same terms and conditions as the Subject Album and Recordings.

And

<u>Accounting/Payment:</u>

-- Accountings to be rendered 60 days following the close of each calendar semi-annual accounting period, including detailed statement of all out-of -pocket costs incurred.

-- Licensor shall have the right to object to an accounting and bring suit therefore up to two years after rendering and bring suit up or 1 year following SR's receipt of Licensor's written objection; however, these limitations shall not apply in the case of misrepresentation by SR.

-- Licensor to have right to audit SR's books & records upon reasonable advance notice at SR's principal place of business in New York during normal business hours (but only with respect to the most recent 2 statements and not more than once in any year), which limitations shall not apply in the case of misrepresentation by SR.

Exhibit C, page 2.

202.    After the July 20, 2009 letter of understanding was signed by Plaintiff and by Sojourn Records, Sojourn Records released thirteen, (13), albums comprised of Shlomo Carlebach's recorded works, including previously recorded studio and live performances.

203.    The album titles released by Sojourn Records are: CARLEBACH SINGS WITH THE CHILDREN OF ISRAEL, THE GIFT OF SHABBOS, HOLY BROTHERS & SISTERS, OPEN YOUR HEARTS, SHLOMO CARLEBACH LIVE, DAYS ARE COMING, SING MY HEART, HANESHAMA LACH, WAKE UP WORLD, SONGS OF PEACE, THE BEST OF RABBI SHLOMO CARLEBACH ( 2 disc CD album), LIVE IN SOUTH AFRICA, ( 2 disc CD album)

204.    Sojourn Records did not provide accountings to Plaintiff within 60 days following the close of each calendar semi-annual accounting period as specified in the letter of understanding.

205.    In fact, Sojourn Records did not provide any accounting of revenue, income, expenses, costs, net income or royalties to Plaintiff for nearly three years after Sojourn Records began releasing Shlomo Carlebach's music and offering it for sale on CDs and by download.

206.    Plaintiff persistently requested accountings for a period of over three years after Sojourn Records began to distribute and sell Shlomo Carlebach's music but did not receive any accounting from Sojourn Records.

207.    The first statement that Plaintiff from Sojourn Records was received in December 26, 2012.

208.    The December 26, 2012 statement did not constitute an accounting, but merely stated gross sums for vaguely described categoric items, without any detail, which Sojourn Records deducted from revenues it purported to have received from the sale and distribution of Plaintiff's work.

209.    Sojourn Records' December 26, 2012 statement included charges against net income in the staggering amount of Two Hundred Fourteen Thousand, Six Hundred Sixty Dollars, ($214,660.00), without any explanation or documentation.

210.    The net income after Sojourn Records' undocumented, unauthorized and unexplained deductions produced a small royalty payment to Plaintiff, without accounting for Sojourn Records' revenue from the sale of Plaintiff's music.

211.    The December 26, 2012 statement from Sojourn Records includes charges in the amount of Twelve Thousand, Six Hundred and Ninety-Three Dollars, ($12,693.00) for a publicist, but provided no information as to the name of the publicist, what services were performed, when and on what dates such publicist performed any services or why this cost was incurred.

212.    Plaintiff was at no time consulted or advised that a publicist was to be retained or how much such publicist was to be paid prior to receiving the December 26, 2012 statement.

213.    By failing to provide Plaintiff any information as to the cost of retaining a publicist within 60 days of the end of the calendar semi-annual accounting period when such charges were incurred, Sojourn Records breached the clear and unambiguous terms and conditions stated in the "deal points" letter of understanding.

214.    The December 26, 2012 statement from Sojourn Records includes charges in the amount of Nine Thousand Three Hundred, ($9,375.00) for a marketing consultant, but no information as to the name of the marketing consultant, what services were performed or why this cost was incurred.

215.    Plaintiff was at no time consulted or advised that a marketing consultant was to be retained or how much such marketing consultant was to be paid prior to receiving the December 26, 2012 statement.

216.    Upon information and belief, the marketing consultant Sojourn Records hired was George Howard, an owner, principal or employee of Sojourn Records. The first time Plaintiff received any accounting regarding George Howard as the "marketing consultant" for Plaintiff's father's music was in a response from Sojourn Records' attorney on November 21, 2018, elicited by Plaintiff's counsel's request for evidence supporting Sojourn Records' hiring of a marketing consultant as required under the July 20, 2009 letter of understanding regarding certain "deal points."    Notably, more than thirty (30) months of George Howard's consulting fees were incurred by Sojourn Records prior to entering into the July 20, 2009 letter of understanding with "deal points."  Sojourn Records sought to charge Plaintiff for a

marketing consultant for two and one half (2 ½) years prior to entering into the SCLA. Moreover, for the George Howard consulting fees allegedly incurred during the term of SCLA, Sojourn Records provides no specificity with regard to George Howard's alleged work on Plaintiff's behalf, providing only a statement indicating payments of Two Thousand Dollars ($2,000.00) per month.

217. The December 26, 2012 statement clearly did not satisfy the requirement that accountings were "to be rendered sixty (60) days following the close of each calendar semi-annual accounting period.

218. Not only was the December 26, 2012 statement provided three years after Sojourn Records had been distributing Shlomo Carlebach's music, there were no interim statements or accountings of any cost, expense, income or royalty provided at any time prior to the December 26, 2012 statement.

219. After receiving the December 26, 2012 statement, Plaintiff continued to request a "detailed statement of all out-of-pocket costs incurred," as expressly required in the July 20, 2009 letter of understanding with "deal points," but no detailed statement was ever received.

220. On or about September 29, 2015 Plaintiff and Mark Ambrosino exchanged email messages which included Plaintiff's notice to Sojourn that the September 23, 2008 letter of understanding with "deal points" as well as the two other letters of understanding concerning Plaintiff's back catalog and Shlomo Carlebach's catalog were terminated.

221. No further accounting details were provided by Sojourn Records, despite multiple repeated requests over a period of multiple years.

222. In reply to Plaintiff's September 29, 2015 email giving notice of termination of the three letters of understanding attached hereto as Exhibits A, B and C, Sojourn Records demanded Three Million Dollars!

223.    On or about July 11, 2018, Plaintiff forwarded letters to Sojourn Records, again stating that the three letters of understanding were terminated and demanding a full and accurate accounting.

224.    On or about July 25, 2018, Plaintiff received from Sojourn Records a statement for costs and expenses titled "2017 and beyond."

225.    Like the December 26, 2012 statement, the July 25, 2017 statement did not provide any details or explanation for the expenses and costs that Sojourn Records subtracted from Album revenue.

226.    On or about August 20, 2018, Plaintiff received correspondence from Sojourn Records' attorney in which inaccurate and inflated figures were again stated, instead of an accurate and reasonably detailed accounting as required under the letter of understanding and "deal points."

227.    By failing to provide Plaintiff any information as to the cost of retaining a marketing consultant within 60 days of the end of the calendar semi-annual accounting period when such charges were incurred, Sojourn Records breached the clear and unambiguous terms and conditions stated in the "deal points" letter of understanding.

228.    Based upon gross misrepresentations in Sojourn Records' inaccurate, insufficient, overstated and extremely belated accounting Plaintiff has suffered damages due to loss and underpayment of royalties owed under the terms and conditions set forth in the July 20, 2009 letter of understanding.

229.    Specifically, Plaintiff is entitled to the payment of the sums stated in the Royalty/Compensation "deal point" included in the July 20, 2009 letter of understanding.

230.    Because Sojourn Records has overstated, misrepresented or improperly imposed charges against the net income from the sale of Plaintiff's music, Plaintiff has suffered loss and damages, plus interest and other damages such as but not limited to attorney fees and costs of this action.

231.     Wherefore, Plaintiff demands judgment against Defendants in the amount to be determined upon a full audit and accounting of Sojourn Records' actual expenses and costs, plus interest and other damages such as but not limited to attorney fees and costs of this action.

**VI**

**FOR A DECLARATION OF THIS COURT TERMINATING**
**THE SHLOMO CARLEBACH LICENSING AGREEMENT**

232.     Plaintiff repeats and reiterates all allegations set forth in paragraphs 1- 231, as if set forth in full and further alleges;

233.     That the aforementioned July 20, 2009 letter of understanding with "deal points" pertaining to Shlomo Carlebach's music never evolved into a "full-fledged" recording agreement.

234.     Additional and other terms and conditions that are routinely contained in agreements in the nature of recording agreements, such as; termination, accounting, independent audit, arbitration of discrepancies were therefore never incorporated into the licensing agreement, although the letter of understanding clearly expresses the parties' intention that such terms and conditions would be incorporated.

235.     A "full-fledged" recording agreement would routinely include, among other things that Plaintiff, as the Licensor would have to approve expenditures that would be deducted from Album revenue and significantly affect net income and royalties.

236.     Upon information and belief neither Sojourn Records nor Plaintiff have any intention to continue the July 20, 2009 letter of understanding.

237.     Neither party intends to work out a "full-fledged" agreement which would contain the "deal points" listed in the July 20, 2009 letter plus "such other terms and conditions that are routinely contained in exclusive licensing agreements," as was the stated and fundamental purpose of the subject letter of understanding.

238.    July 20, 2009 letter of understanding pertaining to Shlomo Carlebach's music includes:

Term:

-- SR Will have the exclusive license to exploit the Albums and the Recordings throughout the Territory for a period of 10 years from the end of the calendar semi-annual accounting. During which the last Album to be released hereunder is commercially released by SR. In no circumstances will any Recordings revert to the Licensor while any additional Albums are still under license. As our shell had a non-exclusive "sell off" period of six (6) months following the end of the Term to sell off any physical product remaining on and at the end of the Term.

Exhibit C, Page 2.

239.    The forgoing description of Term of Sojourn Records' right to license Shlomo Carlebach's music is ambiguous, vague, unconscionable and unenforceable.

240.    Sojourn Records has not, as of the date of this Complaint, provided a sufficiently accurate or adequately detailed accounting to Plaintiff.

241.    Moreover, in view of Sojourn Records' material breach of this agreement by its failure to provide sufficient accounting at any time and failure(s) to pay royalties as required by the letter of understanding, defeats and nullifies any right(s) on the part of Sojourn Records to enforce the Term provision, thus the agreement must be deemed terminated upon notice by Plaintiff.

242.    Wherefore, this Court should declare and order that the July 20, 2009 letter of understanding with "deal points" pertaining to Shlomo Carlebach's music, has been and is terminated as of September 29, 2015.

243.    Wherefore, this Court should declare and order that the July 20, 2009 letter of understanding with "deal points" has been and is terminated as of September 29, 2015.

Wherefore, Plaintiff demands judgment in its favor against Defendants and an Order directing;

a. A full detailed accounting of all revenues, costs, expenses, overhead, sales fees and royalties owed to Plaintiff for and on account of the September 23, 2008 letter of understanding pertaining to Plaintiff's recordings with Sojourn Records after September 23, 2008.

b. A full detailed accounting of all revenues, costs, expenses, overhead, sales fees and royalties owed to Plaintiff for and on account of the March 26, 2010 letter of understanding pertaining to Plaintiff's back catalog.

c. A full detailed accounting of all revenues, costs, expenses, overhead, sales fees and royalties owed to Plaintiff for and on account of the July 20, 2009 letter of understanding pertaining to the legacy recordings of Shlomo Carlebach's music distributed by Sojourn Records after July 20, 2009.

d. A declaration of this Court that the September 23, 2008 letter of understanding pertaining to Plaintiff's recordings is terminated and that all copyrights rights and any and all interest, ownership and control of all of works Plaintiff's works shall revert to Plaintiff.

e. A declaration of this Court that the March 26, 2010 letter of understanding pertaining to Plaintiff's back catalog is terminated and that all copyrights rights and any and all interest, ownership and control of all of works Plaintiff's works shall revert to Plaintiff.

f. A declaration of this Court that the July 20, 2009 letter of understanding pertaining to the legacy recordings of Shlomo Carlebach's music is terminated and that all copyrights rights and any and all interest, ownership and control of all of works shall revert to Plaintiff as Executor of the Estate of Shlomo Carlebach.

g. The return to Plaintiff of all master recordings, audio, video and photographs of Plaintiff.

h.  The return to Plaintiff of all master recordings, audio, video and photographs of Shlomo Carlebach.

i.  Removal from YouTube of all videos of or featuring Plaintiff and/or Shlomo Carlebach and an injunction preventing Sojourn Records, its assigns, agents or employees from posting or uploading any video and or sound recordings of Plaintiff and/or Shlomo Carlebach in the future.

j.  Costs and fees, including but not limited to attorneys' fees as may be awarded by provision of law and within this Court's discretion.

k.  Any and all other and further relief as may be just and proper.


February 7, 2019


*Richard M. Hunter*

Richard M. Hunter (RH-6128)
Attorney for Plaintiffs
Law Offices of John G. Luboja, LLP
500 Executive Blvd. Suite 103
Ossining, NY 10562
(914) 373-5052